Cabrera and Hernandez. Let's start with Cabrera. Is that you, counsel? Yes, it's Andrew Freifeld. Can you hear me? Yes. Good morning. May it please the court? My name is Andrew Freifeld. I represent Mr. Cabrera. I did not represent Mr. Cabrera below. With what I hope you believe from this court, I will restrict my argument today to the kidnapping counts, specifically the keeping force in reserve concept that appears in the kidnapping by enveiglement cases. The court should acquit Cabrera on the kidnapping counts because there is no evidence that any defendant used force. Counsel, weren't the defendants only convicted on those kidnapping counts where the people in the cab asked to leave? No. And they were acquitted on the others? No, there was only one where the person asked to leave and I believe there was three counts that there was convictions on. Okay, continue. There is a statement in the record which suggests that the distinction between the acquittal counts and the conviction counts, I don't think it holds any water. Okay. And that's the only appearance in the record of that. I was saying that there's no... I don't understand you because I read the record the same way Judge Kuhler, that there were acquittals and they were acquittals which were linked to situations where people had not asked to get out. My recollection is that of the incidents, there were three convictions for kidnapping. Three incidents for which there were kidnapping convictions. Within that group, I maintain that there's only one where the person asked to get out. So, that's... All right, continue. We'll look at the record. While we're on that, this is Judge Park. Could I just ask you, the force includes psychological force. And so here you've got, you know, they're taking the immigration documents and holding their kids' hands and then they're in a car for hours. I mean, the whole scheme seems built on fear. So, I don't really understand how there wouldn't be psychological force. I think it's important to distinguish between the taking and the holding elements. If I can concede arguendo that there was force in connection with the holding, as Your Honor has pointed out, assuming that what Your Honor has termed intimidation does constitute psychological force. What about at the beginning, at the time of the taking, when they were approached originally in the Port Authority? Didn't we hold, is it Corbett? I think I was on the panel. At the taking level, all that is needed is invading. No, there is no such holding at Boone. Excuse me, in Corbett. Yes, Your Honor wrote the opinion in Corbett. I think I did. Yes. But I may have missed something in what I wrote. It's possible. The defendant in Corbett ceded the taking element that it was satisfied. So, the court had no cause to consider the taking element in the case. And the same thing applies in Boone. In short, there is no law at all as to whether or not the force applies to the taking element. And it's an open book. And our argument is that for all of the reasons that it applies. Why, under the language of the statute, would you need force for the taking if you had force at the holding? Well, the force at the holding element, the force at the holding level is not in the statute either. That is a judicial graft, if you will, onto the holding. It may be. And it may be that it isn't needed. But even conceding that it is needed at some point in a kidnapping. Why would it be that it was needed at the point at which you inveigle somebody to come with you? If afterwards, through some kind of force, through sometime during the kidnapping, you use some kind of force. Which may be psychological, as Judge Barksley said. I submit there's no reason to distinguish between the two. That under Chapman, force has to infuse the entirety of all of the elements. And short of that, it's not a federal kidnapping. And we have never said that, to the best of my recollection. Isn't that correct? This court has never said that. That's correct. They have said that it must infuse the holding element. The court has not said that it must infuse the taking element. That's an open issue. Thank you. You have reserved one minute for rebuttal. Thank you. We'll hear from Bettencourt. Mr. Dubey. Good morning, Your Honor. Good morning, counsel. My name is Chris Dubey, if it pleases the court. I represented Mr. Bettencourt at the district court level before Judge Underhill. And, of course, I do now before this panel. My argument before this court now is a little nuanced but different than the one Mr. Freifeld just made. It was my opinion at the time, and it remains now, that really what we had here was a fraud. It was a scam. And that the jury was never properly instructed on what it is they would need to find or be able to do in order to convict the defendants, especially Mr. Bettencourt, of taking part in a fraud. You argued that fraud is a lesser-included offense of the kidnapping charges? Correct, Your Honor. And, to be honest, your reaction is exactly the same as Judge Underhill's was. Well, it's creative, but tell us more. Sure. And this is why. To my mind, you know, if I could be candid, until I got involved with this case, I don't know that I'd ever even heard the word in Bagel. But when looking it up further, really what anybody would understand it to mean is a scam, is a fraud, is a hustle, any of these commonplace words. And that's really all that this was. So without some of the things that Mr. Freitheld and the panel just talked about, with force or holding, now really all we have… But isn't that essentially foreclosed by the test that Schmuck put in? It's not a case that I'm particularly fond of, but aren't the requirements of that test such that fraud would not be a lesser-included offense here? You know, Judge, to be honest, I've struggled with that, and I couldn't categorically tell you that I disagree. The problem I have with it as an academic exercise, though, is that there's a simplicity in what I'm saying that I don't think those cases admit to. In order for this kidnapping to have taken place the way the government says, there has to have been a scam. There has to have been a trick. And I think it's just that simple. I don't think that there's other things that really need to sort of cloud the analysis because… And unfortunately, some of the cases that really help us are, as Your Honor knows, are exceptionally violent cases. And we don't have anywhere near that level of violence if we even have any at all in this case, which makes it even plainer. So, as soon as Mr. Dancourt approaches these people at the court authority and tricks them and scams them and hustles them, that makes… You know, I could well understand the argument that this is – that what is alleged is both a fraud and this, and that, therefore, perhaps it should be a lesser-included offense. But I don't see how we can do it on our cases, on our precedent. That's where I have problems. Judge, the last thing that you couldn't understand how we can do it on our precedent, is that what you said? I don't know. I don't see how we can say that it is a lesser-included offense, given what our precedents, including Schmuck's, have held. Right. And I understand that to a degree. I guess my difference comes in is really, in its simplest state, is an element of 1201. Fraud is an element of 1201. If you buy into the fact intellectually that – and I understand reasonable minds in this degree. I do. But if you buy into the fact intellectually that inveiglement is an element… I love to buy into things intellectually, but occasionally I do have to follow precedent. Oh, I understand. But I think, though, that at its simplest, Judge, the jury was – Mr. Bettencourt did have a right to have the jury instructed as to his theory of the case. And that was our theory at this trial, that there was no violence, that there was no holdings. And frankly, I think that, as Your Honor was getting at before, the way the jury constructed the verdicts reflects the fact that there was none of that. I say I've run out of time. I don't know if the panel has anything else for me. Thank you, Counsel. Thank you, Counsel. You have reserved one minute for rebuttal. And we'll hear now from Hernandez, Mr. Goulash. Good morning, Your Honors. John Goulash for Mr. Hernandez. And like Attorney Dubey, I did represent Mr. Hernandez in the trial of the case. And I would, with the court's permission, like to focus on the failure to instruct on the holding incidental to another offense request that all counsel made in relation to this case. I think to zero in for a moment on the previous argument on lessors, I provide, I think, a very viable basis that can keep the court potentially away from having to wrestle with, is it technically a lesser or not? Does it adhere to the stringent elements requirements that I think His Honor Judge Calabresi referred to? And that is that this is a viable, legally accurate instruction on the law that the Chos failed to give. And it went right to the heart of this case. I think that intent is, whether or not we zero in on at the taking or at the holding, the intent to have that force and reserve that Your Honors are familiar with and analyzing and typically analyzing intent by a jury. You know, let's say me as a trial attorney. Aren't all the cases where we've done something like yours, where the holding was very short and incidental to something, it was clearly something else. That is, they're all cases of sexual involvement or something of that sort. Well, here, the holding was longstanding. It was just a very important part. It was the central part of the offense. Yes, Your Honors. But I think that at the start, we would all find it difficult to imagine that a fraud case falls into the same category when you analyze the facts of why they're developed in the kidnap law that under certain circumstances take. You would typically see it in the sex assault case, an assault case, a robbery case where inherent. It's a relatively brief interaction between the parties. Here we have an allegation alleged by the government, which by its nature is a long over a period of time. If you look at it as a fraud case, they're fraud cases that take 10 minutes. And there are fraud cases such as here alleged that the fraud was to basically transport people in vehicles on highways, substantial distances that cover a long period of time. And by their nature inherently involved, it was against their will. Well, that would be the question for the jury to determine. And in making that determination, whether it was against their will, it wasn't. At what point in time was were reservations expressed by the passengers? Your argument essentially is that while those other cases focused on time, that was because that was the nature of that offense. And that here this fraud necessarily was one which was much longer. And therefore, that's what's going on. And we should use the same analysis here. Absolutely, Your Honor. And when you just think about it in terms of built into this particular particular livery service fraud, the longer it takes, the better. On the other hand, one can also say that what is going on here is really a kidnapping in the sense of holding people for a long time, even though you got them in there because of fraud and you're holding them for a long time. And is that holding for a long time that gives rise to the equivalent of what in a kidnapping case is the money to get the people out of it so that this thing fits the pattern of classic kidnapping. But only incidentally, and that and that at least in terms of it, I'm out of time. Finish your thought. The government makes reference to lots of case law in states and around the country, and it shouldn't be viewed negatively. But rather, those are cases that specifically analyze the federal kidnapping statute in their conclusions that the holding instruction needs to be given to fully instruct on the intent necessary by the force and reserve.  Thank you. We'll hear from the government. Good morning, counsel. Good morning, Your Honors. Robert Ruff for the United States and may it please the court. I think what we've got here is a case where the defendants may have believed that they committed a fraud. And really, they have an evidentiary issue. They have an issue with the way the jury returned the verdicts. But at the end of the day, the jury instructions were legally appropriate and the evidence was sufficient to allow a rational jury to reach the verdicts that it reached. I'll just take the three main issues that were raised. On the issue of incidental holding, the panel is correct that this issue comes up almost entirely, if not exclusively, in offenses where some amount of holding is inherent. And so the test that gets applied in these cases is aimed at separating what seems like a kidnapping basically from something that doesn't seem like a kidnapping. So you might have an assault where some detention is, there's brief detention and the detention is inherent in it. The offense that occurred doesn't appear like kidnapping. And so what the test does, it says, if there's a fleeting holding and if it's a holding that's inherent in the underlying offense, then maybe that's a reason to include. Your argument here is it's not inherent because if they asked to be let out, fraud was what it was. But if they asked to be let out, they could be let out and would be let out. And then there were acquittals so that it isn't inherent in the fraud that there be a holding. That's exactly right, Your Honor. There's no holding against anyone's will inherent in the crime of fraud. And so once you introduce that holding, it turns a fraud. And while there may have been enveiglement and there may have been trickery, once you introduce that holding, it takes the offense out of the fraud context and into the kidnapping context. But when you say that, when you say that, doesn't it really mean that fraud is a lesser included offense here? There was. I mean. Yeah, no, go ahead. So I think there's really there's really two issues on the lesser included offense front. So there's the more there's the more academic question of what what is the jury? What should the jury hear about the defense theory that really this was a fraud and not a kidnapping? Then there's the more rigid test, the schmuck analysis as far as should the jury hear the elements of an uncharged crime and the lesser included offense doctrine? I think on the first issue, I think the jury heard everything that it should have heard, which is the jury did hear from the district court as well as as well as counsel in closing arguments did hear the defendant's theories that they committed a fraud, not a kidnapping. The court did allow defense counsel to pursue with fervor those arguments in closing. And the court also instructed that any holding under the kidnapping statute must be of an appreciable duration. And so I think those those aspects allowed the defendants to make their arguments that this was a fraud and not a kidnapping of the jury. Are you arguing, counsel, that the jury could have found that the holding was incidental to the fraud? Did the verdict sheet allow them to do that? Incidental to use that exact word? No. The instruction was that it had to be for an appreciable duration. And so if it was a holding that was fleeting, the jury could have found I don't think the facts supported it here, but the jury would have been able to find as a legal matter that the holding was not appreciable. But on the issue of a lesser included offense, I think simply as the court alluded to earlier, this simply doesn't meet the elements test, the elements of mail fraud or not a subset of the elements of kidnapping. But I think the concern that the court raised that the jury should hear something about the defense theory, I think the jury did hear what they needed to hear in terms of the defense's theory being explained to them, the defense being allowed to expound on that theory. And then the jury was also instructed on the elements of kidnapping. And so it may be that the defendant's conduct rises. The defendant's conduct constituted fraud. It's very possible. But if it also constitutes kidnapping, then the verdicts are appropriate. And I think the fact that the that the jury returned a guilty verdict on some kidnapping charges and acquitted on others shows that the jury understood exactly what the requisite elements were. On one issue, attorney Frefeld mentioned earlier that there were there was an issue of how many kidnapping convictions there were. But the court was correct that the only time that the jury returned guilty verdicts on the kidnapping charges is when the victims, or at least the guardian of the victims who was in the car, asked to be let out and was and was denied. And on the other, the other incidents. Are we correct about that, counsel? That was my understanding of the record. Yes, Your Honor. I would just point the court to for the one incident was on pages 60 to 61 of the government's brief. The government includes record sites there regarding when there was a request made to be let out of the car and that was denied. That was the Arma Mata Lopez. That was the that was the adult in that incident. And then on the page 67 of the government's brief, the Martina Arias Gutierrez incident page 67 of the government's brief sites, record sites where she had asked that car turning to the issue of force and reserve. We've covered holding incidental and lesser included offense turning to the issue of force and reserve. I think as the court suggested that there's really no legal authority, the legal authority that exists on where force is required in the kidnapping statute, including Corbett and Boone all say that where where force is required, it's under the holding element. I think no one would argue that force is required under, for instance, the interstate commerce element. I don't think anybody would say the interstate commerce can be satisfied with cell phone use. I don't think anybody would say cell phone had to be used forcefully. And under the holding element, the district court gave that instruction, instructed, consistent with Boone, that which is what the defendants asked for, consistent with Boone, that the holding element, if it's if the kidnapping is committed by embezzlement, that the defendants must intend to be willing to use force to back up that holding. Should the deceit fail. And as far as whether there's we have no evidence, there is no evidence in the record that they were prepared to use force. What is there? I think there is. I think there's ample evidence of that, Your Honor. I would point. I think the most direct evidence is that the where the where the victims asked to be let out of the car, they were refused. And so they were on they were in fast moving vehicles on the highway, asked to be let out and were told no. I think that's that's categorically. But counsel, we can all agree. I think that these were not what you'd call violent crimes. Isn't that true? I would agree, Your Honor. And I think kidnapping is very. These guys got a very long sentences for ultimately what were nonviolent crimes. They received lengthy sentences, Your Honor. I would I would note that the sentences were well below the guidelines, which I think that is an area where the government's that argument. This is a typical kidnapping case. And certainly you look at the precedents that are cited in the party's briefs. Usually they involve heinous, horrific. Is your argument that force need not be violent, that force can be there in other ways, either psychologically or prove a very fact of being in a car that is moving quickly and people asked to be let out and they're not. So I hear you saying that force can be there even if it isn't something that we would call violent. Yes, I agree, Your Honor, that that is the government's position. I think under the kidnapping statute, under the holding requirement, force can be physical or psychological. When we talk about violence, for instance, under the 924 C and the elements test and those sorts of things, that that area requires physical, physical force. And so I don't think the kidnapping statute is so narrow. It encompasses psychological. Now, opposing counsel suggested that you also needed force at the original taking and that that was left open in Corbett. We assumed that there was whatever was was needed and never dealt with it. What is your position on that? That issue was not answered by Corbett, I think, because the parties conceded that a taking had occurred and likely they conceded it because there was inveiglement in that case. And inveiglement under the statute is one of the means by which the taking can be accomplished. And so as far as whether, you know, if the court were to address the question that's presented, whether force is required to accomplish the taking, I think the statute plainly includes means by which taking can be accomplished without. Inveiglement as opposed to force. Inveiglement and decoy are the two under the statute, I believe, that are the non-forceful means. What I'm trying to figure out is whether you are conceding that force needs to be used at a holding time, though not at an original taking time, or whether you are saying that somewhere in to constitute kidnapping, there has to be force. And whether it is, it isn't in the statute, the statute doesn't say anything about force, but that somehow, somewhere, whether it's taking or at holding, there has to be something we call force. I think, Your Honor, there has to be an intent to use force. I would point to the Boone decision. Yes, yes, that's what I mean. An intent to use force. And so a kidnapping can be accomplished by inveiglement, which is non-forceable. And they got a Boone instruction, didn't the jury get a Boone instruction? They absolutely did, Judge. They did under the holding element of kidnapping, which I think is consistent with Boone, and also with the way, I understand the court did not answer the question of the Boone circuit split in Corbett, but the way the court framed the issue in that opinion is under the holding element. And to answer Judge Calabresi's question, there is, I think, under Chotwin, actually, the Supreme Court decision, that interprets the holding requirement to include some confinement against will. And I think the way Boone analyzes it, I think, makes sense, which is when you're doing a kidnapping by inveiglement, which is, again, expressly covered by the statute, that holding against the will, holding confinement against a person's will is covered where the person's confinement is a result of the inveiglement, plus the defendant's intent and willingness to use force should the deceit fail. And so I think that's where the force element comes in as far as the taking element. The way I think of it is the taking is... But you're not arguing that containment against will can be met without an intent to use force, because, you know, just literally speaking, somebody may be contained against their will through being completely inveigled and misled. They would have left if they had known otherwise. I'm not sure that the language of the Supreme Court carries us as far as to a requirement of some intent to use force. I'm perfectly happy to have you say that we should read that into it, but I'm not sure that the Supreme Court does. So, Your Honor, below, the government initially, at least, did not ask the defendants, were the ones who were asking for the force instruction, and that's what the court did below under the holding element. I think there is certainly an argument that trickery, kidnapping statute is worded very broadly. And arguably, if you view inveiglement as removing consent... You say that that's not needed in this case. I don't think it's enough. I don't think it's needed in this case, Your Honor, because the district court instructed on force, the intent to use force under the holding element, and there's ample evidence supporting that that intent existed. And so there is an interesting academic question as to whether inveiglement alone without any intent to use force is enough, but it's not the question that's presented here. And so, again, I think the jury instructions were appropriate. I think the defendants, you know, understandably, this is an unusual kidnapping case, but the legal instructions were appropriate, the jury instructions were appropriate, and there is ample evidence to support the elements of kidnapping and of extortion. And so unless the court has further questions, the government will rest on its brief as to the remaining issues. Thank you, counsel. I will turn to the defense attorneys. Siri Adam, as they argued before. Mr. Freifeld for Cabrera. You have one minute. Thank you, Your Honor. There were five incidents of kidnapping charged. The defendants were convicted under three of them. My adversary just conceded, it appeared to me, that in only two incidents did one of the passengers ask to get out. So that leaves one on the table where it appears my adversary concedes that there was no force used. There is a factual dispute as to, you know, I don't agree with him that there were two. I maintain that there was only one. But in any event, there's one outstanding. I'd like to take a moment to respond to Judge Calabrese. There's no question that force must form part of the act in order to be kidnapping. And there is no need that the victim be aware. I'll give you an example. A person gets inveigled. They're in the car. They inform the person's family that they're holding the person. And unless they get paid ransom, they're going to hurt the person. In the meantime, they're keeping a gun just in case the person undoes the inveiglement. But it turns out that they pay the ransom before the person ever learns that they've been kidnapped. And they let the person go. That would be kidnapping, even though the person never became aware of it. But they never threatened, really, to harm the passengers, did they? No, but they held a gun just in case the passenger figured out and wanted out. Did they display the gun to any of these passengers? In my hypothetical? Yeah, well, no, in the record. No, no. Sorry. I must have misspoke. There's no gun in this case. I was giving a hypothetical where I'm sorry. May I just finish the thought? I was giving a hypothetical in response to Judge Calabrese. Yeah, no. I understand your hypothetical. Thank you. Thank you. The gun might have made a difference. Pardon me. Let me turn to Betancourt, Christopher Dubie. Counsel? Thank you, Judge. Your Honor, I don't have a ton to say. I just wanted to respond to one thing Mr. Ruffett brought up. I think Your Honor was the one bringing it up with the government, that these were nonviolent crimes or words to that effect. And I think it's an important factual thing to remember here is that with some of these arrangements, the people in back that were tricked into getting in the car were given food, were let out to go to the bathroom. They stopped for comfort breaks. They bought diapers for their children. And all that goes against the force that the government reads into this case and demonstrates more that it's a fraud. They're doing those things so they make sure they get paid at the end of the trip. I think those things are very telling in this case. And I'd ask the panel to give those non-criminal acts a lot of consideration in terms of how this case was shaded. But thank you very much. It was great being before you. Thank you, Counsel. Thank you, Counsel. Let me turn to Mr. Gulash for Hernandez. Yes, very briefly. Thank you, Your Honors. I think the government has essentially conceded that whether it's only confined to the holding, that there needs to be this force and reserve requirement that I think the Second Circuit should at least clearly adopt. In getting over that one hurdle, then I think we get then to the significance of having had our defense theory not presented on not instructing the jury on the potential insignificance as it relates to kidnapping of the issue of holding people in a car. And that is that however scant the theory of defense, if it does arise out of the evidence and it's relevant to the intent element in this case, it's clear the state didn't give it. I'm sorry, the government didn't do it. The judge didn't do it. I'm sorry. The judge did seem to be without guidance from the court as to whether or not, in fact, that if the holding is only incidental to another offense, whether or not he should give an instruction in that regard. I think this court should agree that if, in fact, the holding is incidental to the other offense, the livery offense, and I'm sorry, incidental to kidnapping, then that element of the kidnapping would not have been found. Or the jury would have been given proper guidance as to how to assess the circumstantial evidence as it related to intent. And simply didn't give it. It was a proper instruction. He didn't give it. It would have aided the jury in wrestling with the issue of whether or not the requisite intent was there. Thank you, counsel. Thank you all. Very interesting case. We will reserve decision. Thank you very much.